UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH K.,

                                    Plaintiff,

                                                                    DECISION AND ORDER

                                                                    23-CV-0649DGL

                    v.


COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

        Plaintiff appeals from a denial of disability benefits by the acting Commissioner of Social

Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review

the Commissioner's final determination.

        On November 6, 2020, plaintiff filed applications for a period of disability and disability

insurance benefits, and for supplemental security income benefits, alleging an inability to work

since October 29, 2018. Her applications were initially denied. Plaintiff requested a hearing, which

was held before Administrative Law Judge Linda S. Harris Crovella, who issued an unfavorable

decision on September 8, 2022. (Dkt. #5 at 15-29). That decision became the final decision of the

Commissioner when the Appeals Council denied review on May 10, 2023. (Dkt. #5 at 1-3).

Plaintiff now appeals.

        The plaintiff has moved for judgment on the pleadings reversing the decision and

remanding for further proceedings (Dkt. #6), and the Commissioner has cross moved for judgment

on the pleadings (Dkt. #7), pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below,

the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical history, and determined that she has the severe impairments, not meeting a listed impairment, of morbid obesity, degenerative disc disease of the lumbar spine (status post surgery), and headaches. (Dkt. #5 at 18).

The ALJ observed that plaintiff had also been diagnosed with panic/anxiety disorder and attention deficit hyperactivity disorder. Applying the special technique for mental impairments, the ALJ determined that plaintiff has no limitation in understanding, remembering, and applying information, no limitation in interacting with others, no limitation in maintaining concentration, persistence, and pace, and a mild limitation in adapting or managing herself. (Dkt. #5 at 18-20). The ALJ accordingly concluded that plaintiff's mental impairments were not disabling, and were nonsevere, but indicated that her RFC assessment reflected the degree of limitation caused by plaintiff's mental impairments. (Dkt. #6 at 20).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with no more than occasional stooping, kneeling, crouching, and crawling. She cannot tolerate concentrated exposure to extreme humidity, noises louder than office level, odors, dusts,

2

gases, poor ventilation, and hazards such as unprotected heights and dangerous moving machinery. She requires the ability to sit for two minutes, while remaining in place and productive, after every hour of standing. She will be off-task for 10% of the workday. (Dkt. #5 at 21).

When presented with this RFC as a hypothetical, vocational expert Rocco J. Meola testified that an individual of plaintiff's age and educational level, with this RFC, could perform plaintiff's past relevant work, consisting of the two sedentary jobs of Legal Secretary and Administrative Clerk. (Dkt. #5 at 28-29). The ALJ accordingly found plaintiff not disabled.

## I.    Whether the ALJ's RFC Determination Was Supported By Substantial Evidence

Plaintiff argues that the ALJ erred by including the highly-specific limitations of 2 minutes of sitting for every hour of standing, and 10% off-task, in plaintiff's RFC, without reliance upon any specific medical opinion. Specifically, the ALJ indicated that "due to ongoing lumbar spine issues and the claimant's obesity, postural limitations and an ability to shift-positions [sic] are added to the [RFC]. In consideration of the claimant's migraines and occipital neuralgia, environmental limitations [specific to the migraine triggers about which plaintiff had testified] and an off-task limitation are added." (Dkt. #5 at 27).

Initially, an "RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole." *Anne L. v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 19846 at *36-*37 (W.D.N.Y. 2024)(citing *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017)). Indeed, "there is no requirement that an ALJ's finding be based on a medical opinion at all," so long as it is supported by substantial evidence of record. *Id*.

Furthermore, "a limitation with a percentage range or other descriptor that does not perfectly match a medical opinion is not automatically unsupported by substantial evidence."

*Johnson v. Colvin*, 669 Fed. App'x 44, 47 (2d Cir. 2016). *See also Brett S. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 124552 a *9 (W.D.N.Y. 2023)("the fact that the ALJ assigned a specific time frame to illustrate [p]laintiff's [sit-stand] limitation does not undermine the ALJ's [RFC] finding, so long as it is supported by substantial evidence," including reports of limited gait and difficulty with prolonged sitting, and physician opinions finding "moderate" difficulties with "prolonged" sitting, standing, and walking); *Dawn T. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS at *8 (W.D.N.Y. 2023)(sit/stand option need not be tied to "any particular medical evidence").

The Court turns, first, to the ALJ's finding that the ability to shift positions for 2 minutes every hour was sufficient to accommodate plaintiff's difficulties with "prolonged" standing or walking. There was substantial evidence in the record supporting the need for a position change limitation. Plaintiff testified that her ability to stand was limited to 15-20 minutes. However, the ALJ concluded that such a dramatic limitation was not well-supported by the objective evidence of record, including repeated examination findings of normal gait, stance, strength, sensation and reflexes, negative straight leg-raising tests, mild findings on lumbar x-rays, plaintiff's self-reported daily activities which included regular walks, and her physicians' repeated advice to engage in regular aerobic exercise. (Dkt. #5 at 23). The ALJ also noted that plaintiff had reported significant improvement in back pain after her surgery, and that her symptoms were managed thereafter with conservative routine treatment, consisting of anti-inflammatory medications and a few months of physical therapy. (Dkt. #5 at 24).

Consulting internist Dr. Nikita Dave examined plaintiff on February 26, 2021, with grossly normal findings of normal gait, full range of motion in the spine and all extremities, full strength in all extremities, intact sensation and reflexes, and negative straight leg raising tests, etc. (Dkt. #5

at 749-53). She opined that with respect to her lumbar spine plaintiff may have "moderate" limitations for "prolonged walking," and might require "rest intervals" to change positions, although she did not describe the frequency or duration of such intervals in quantifiable terms. (Dkt. #5 at 752). No other treating or examining physicians rendered opinions as to plaintiff's physical RFC, and the opinions of state agency reviewers did not indicate that any position-change limitation was necessary. (Dkt. #5 at 26).

Even assuming *arguendo* that the ALJ erred in declining to credit plaintiff's testimony that she couldn't stand for more than 15-20 minutes at a time, and/or otherwise erred in finding that a 2-minute "sitting break" every hour was sufficient to accommodate plaintiff's need to avoid "prolonged" standing or walking, such error is harmless. The vocational expert testified, and the ALJ concluded, that plaintiff's RFC otherwise permitted her to return her past positions as an administrative clerk or legal secretary, both of which were performed at the sedentary level, and do not require more than occasional standing or walking, either as typically performed, or as plaintiff testified she performed them in the past. As such, remand – for further consideration of whether the RFC determination sufficiently accounted for difficulties with prolonged standing or walking – would not change the outcome of the disability determination, and would serve no proper purpose. 20 CFR §404.1567. *See Poupore v. Comm'r of Soc. Sec.*, 566 F.3d 303, 306 (2d Cir. 2009)(the need to "get up and move around from time to time" does not preclude the performance of sedentary work); *Ellers v. Berryhill*, 2018 U.S. Dist. LEXIS 97701 at *6 (W.D.N.Y. 2018)(sedentary work accommodates even "marked" limitations in standing or walking).

With respect to the ALJ's conclusion that a 10% off-task limitation was sufficient to accommodate plaintiff's migraine symptoms, the ALJ noted that plaintiff's headache treatment

had remained largely unchanged since she was diagnosed with migraine headaches in 2017, and that her progress notes from 2017 through 2022 reflected "good results" in reducing her headaches with prescription medications, occipital nerve block treatments, and medical marijuana, with her neurologist's only additional advice being to avoid food-based migraine triggers, obtain good sleep, eat regular meals, and exercise regularly. (Dkt. #5 at 22, 564-694, 861-982, 1105- 1169). As for the frequency of plaintiff's headaches, plaintiff testified that she gets debilitating migraine headaches at random, and that they had, at the time of the hearing, suddenly and recently "increased" to "about once a week," thus suggesting that their typical frequency was less than once per week. (Dkt. #5 at 54).

Plaintiff's testimony that she typically experienced migraine headaches up to once a week, which the ALJ implicitly credited, is supported by her treatment notes: on August 4, 2021, plaintiff complained that she was experiencing a temporary increase in her headaches to "1-3 times per week." She indicated that her prescribed nasal spray and medication were proving effective as abortive treatments (intended to halt or lessen migraine symptoms once they arose), but she was nonetheless interested in additional preventative treatment options. (Dkt. #5 at 1150). Plaintiff was prescribed a new medication, and on October 5, 2021 she indicated that her headaches had "decreased to once weekly, rated 5/10 in pain severity." (Dkt. #4 at 1136). On November 4, 2021, she reported a "significant decrease in headache activity" since August 2021, which she attributed to the new medication, and indicated that she was "quite pleased with her current treatment plan." (Dkt. #5 at 1126).

Plaintiff's treatment records thereafter do not reflect any further complaints of increased migraine frequency, severity, or duration, or any indications that the abortive treatment methods she was prescribed ceased to be effective. As such, to the extent that the ALJ concluded that

plaintiff's headaches occurred once per week or less, and that she therefore would not be off-task due to migraine symptoms for more than 10% of the time during the workday, her conclusion was supported by the medical evidence of record.

This is not a case where the ALJ formulated a highly-specific RFC, wholly unconnected with any medical opinion or diagnosis, and failed to explain her reasoning with sufficient specificity for the Court to glean her rationale. Rather, the ALJ appears to have reached common-sense conclusions, based on the evidence of record, to quantify the functional impact of plaintiff's spinal issues, obesity, and migraine headaches on her RFC.

In any event, it was plaintiff's burden to prove that she was limited to a greater extent than the ALJ determined, and plaintiff has produced no medical evidence or physician opinion to indicate that she required a more lenient sit/stand option (or alternatively, that she was incapable of performing the exertional requirements of the sedentary positions the ALJ found per capable of performing), or that experiencing a migraine headache up to once per week would cause her to be off-task for more than 10% of the work day. *See Janelle J. v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 5434 at *22, *30-*31 (W.D.N.Y. 2024)("the burden to provide evidence to establish the RFC lies with [p]laintiff – not the Commissioner," and as such, ALJ did not err in determining that off-task time was not required to compensate for migraines, since no evidence indicated that it was necessary, and medical records showed that plaintiff's headaches had been reduced and managed with preventative and abortive treatment)(citing 20 C.F.R. §§404.1512(a), 416.912(a)).

## II.      The Completeness of the Record

Plaintiff also contends that the ALJ's RFC finding was made without a complete record, because the ALJ did not obtain treatment records from plaintiff's individual sessions with her therapist, but instead relied upon mental health intake assessments and progress notes from

plaintiff's treating psychiatrist, Dr. Joshua Morra (Dkt. #5 at 1179-94, 1198-1259), and the opinion of consulting psychiatrist Dr. Christine Ransom. (Dkt. #5 at 756-60).

The Court disagrees. It is well settled that an ALJ's obligation to develop the record "is not infinite, and when, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is not necessary." *Jessica L. v. Saul*, 2021 U.S. Dist. LEXIS 15513 at *9 (W.D.N.Y. 2021)(ALJ did not err when he failed to obtain certain mental health treatment records, where the record before the ALJ was sufficiently complete to make "a well-reasoned determination supported by substantial evidence"). Here, the record included hundreds of pages of mental health treatment notes, including over three years of treatment notes and assessments from plaintiff's treating psychiatrist, and the findings and opinion of a psychiatric consulting examiner, all pertaining to the period under review. Plaintiff does not argue, nor does the record suggest, that additional counseling records were necessary for the ALJ to decide her claim, or that they would have contained evidence sufficient to alter the ALJ's determination.

## III.   The ALJ's Consideration of Plaintiff's Mental Health Impairments

Finally, plaintiff argues that although the ALJ indicated that she had considered the impact of plaintiff's mental health impairments on her RFC, she failed to include any relevant limitations, or to sufficiently explain why such limitations were not necessary.

Courts have consistently rejected the argument that non-severe impairments *must* be found to manifest in some kind of RFC limitation, particularly where, as here, no more than mild limitations have been identified. *See Lynette W. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 44015 at *12-*13 (W.D.N.Y. 2021)("mild" mental limitations do not necessarily require the addition of mental RFC limitations); *Jane M.A. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS

3085 at *12 (W.D.N.Y. 2021)(same). Here, while the ALJ did not elaborate on her reasons for declining to include mental limitations in plaintiff's RFC, other than to make the blanket statement that she had considered the "effects" of non-severe impairments, the record contained sufficient discussion from which the ALJ's reasoning can be identified and assessed.

For example, the ALJ described and weighed the persuasiveness of the mental RFC opinions of consulting psychiatrist Dr. Ransom, and two state agency reviewers, none of which assessed *any* mental limitations. After noting that each of these opinions was consistent with and supported by plaintiff's mental health treatment notes and other evidence of record, the ALJ determined that they were persuasive. (Dkt. #5 at 25-27, 78, 112, 758-59). To the extent that plaintiff's treating psychiatrist and a nurse practitioner had described more significant mental health limitations, the ALJ found those opinions unpersuasive, given their inconsistency with plaintiff's treatment records, her own statements of improvement, and her robust and independent activities of daily living. (Dkt. #5 at 19-20, 25-26). In light of the ALJ's detailed discussion of plaintiff's mental health impairments, her finding that medical opinions of record indicating that plaintiff had no work-related mental limitations were "persuasive," and her determination that plaintiff's only mental limitation was a "mild" limitation in the area of adapting and managing herself, the ALJ's implicit conclusion that plaintiff's RFC did not require any mental limitations was sufficiently explained, and supported by substantial evidence. I find no cause to disturb it.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of legal error. The plaintiff's motion for judgment on the pleadings reversing and remanding the matter for further proceedings (Dkt. #6) is denied, the

Commissioner's cross motion for judgment on the pleadings (Dkt. #7) is granted, the decision appeal-from is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 11, 2024.

10